IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

<table>
<tr><td>SABRENA WHITT,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>Civil Action No. RDB-16-2492</td></tr>
<tr><td>v.</td><td>*</td><td></td></tr>
<tr><td>R&G STRATEGIC ENTERPRISES,</td><td>*</td><td></td></tr>
<tr><td>LLC,</td><td>*</td><td></td></tr>
<tr><td>Defendant.</td><td>*</td><td></td></tr>
</table>

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Plaintiff Sabrena Whitt ("Whitt" or "Plaintiff") brought this action against Defendant R&G Strategic Enterprises, LLC ("R&G" or "Defendant"), alleging violations of the Family and Medical Leave Act of 1993, 29 U.S.C §§ 2601 *et seq.* ("FMLA") and defamation. (ECF No. 2.) Specifically, Plaintiff alleges that R&G interfered with the exercise of her FMLA rights (Count I), retaliated against her for exercising her FMLA rights (Count II), and defamed her under Maryland state law (Count III)[1]. Currently pending before this Court is Defendant's Motion for Summary Judgment on all three claims. (ECF No. 26.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 26) is DENIED in part and GRANTED in part. Specifically, Defendant's Motion is DENIED as to Counts I and II, and this case will proceed to trial on Plaintiff's FMLA

---

[1] Plaintiff's Complaint labels both her retaliation claim and defamation claim as "Count Two". (ECF No. 2.) For clarity purposes, this Court will treat the third claim listed on the Complaint, the defamation claim, as Count III.

1

interference and retaliation claims. Defendant's Motion is GRANTED however, as to Count III, and judgment is ENTERED in favor of Defendant on Plaintiff's defamation claim.

## BACKGROUND

In ruling on a motion for summary judgment, the court reviews the facts and all reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013). In 2010, Plaintiff began working for Baltimore Security Consultants, LLC ("BSC"), which operated under the franchise name Signal 88 Security. (Whitt Aff., ECF No. 27-1 at ¶ 2.) At the time, BSC had contracts with approximately twenty apartment complexes, office buildings, schools, and retail facilities. (*Id.* at ¶ 3.) In January of 2015, BSC sold some of those contracts to Defendant R&G, which provides security services for residential, commercial, retail, and institutional customers and also operates as a franchise of Signal 88 Security. (*Id.* at ¶ 4; Lemmer Aff., ECF No. 26-4 at ¶ 3.) The Chief Executive Officer of R&G is Ryan Lemmer, who is based in Boston, Massachusetts. (ECF No. 26-4 at ¶ 3; ECF No. 27-1 at ¶ 11.)

As a result of the above sale to R&G, Whitt became Director of Operations for R&G. (ECF No. 26-4 at ¶ 4.) The "Office and Time Off Policy" provided that offices were to be staffed from 8:30 a.m. to 5:00 p.m. Monday through Friday, teleworking or flexibility in office hours required approval by Ryan Lemmer, and an employee in Whitt's position was given four sick days and ten vacation days. (Whitt Dep., ECF No. 26-3 at 23; Exh. 9, ECF No. 26-3 at 69-71.) Aside from this policy, Plaintiff testified that she never received an employment manual or any written disciplinary rules or guidelines. (ECF No. 27-1 at ¶ 14.)

In her capacity as Director of Operations, Whitt's roles were maintaining the office, running the fingerprint business, hiring security personnel, account management, and summiting paperwork including hiring packets in a timely fashion. (ECF No. 26-3 at 12-13.) On or around December 1, 2015, however, several new hire packets were not timely submitted, which resulted in a few employees not getting timely paid. (*Id.* at 17.) This was brought to the attention of Whitt's supervisor, Mike McNamara, Director of Operations of Lemmer's franchises who like Lemmer, is also based in Boston. (ECF No. 26-3 at 58-60.) McNamara sent an email regarding the new hire packets to Whitt, who explained that the packets were not submitted because they were not complete prior to her going on a scheduled vacation.[2] (*Id.*) Under the prior management, she would not submit incomplete packets. (ECF No. 27-1 at ¶ 30.) Lemmer was copied on this email exchange in addition to being copied on or forwarded all of the below email exchanges between McNamara and Whitt.

In late December of 2015, Whitt became Regional Manager for the Southern Division. (ECF No. 27-1 at ¶ 9; ECF No. 26-1 at 2.) Subsequently, she was advised in an email from McNamara on January 12, 2016 that her responsibilities would be overseeing five properties and that she was responsible for, among other things, staffing the properties, making at least twenty client contacts per week, following up with clients concerning client issues, and ensuring employee training and performance standards were met. (ECF No. 26-3 at 21, 64; ECF No. 27-3.) One of the five properties was the Enclave Apartments, a new

---

[2] The timeline for this case is gathered largely from numerous emails exchanged between Plaintiff Whitt, Defendant R&G's CEO Lemmer, and Director of Operations McNamara. Neither party in their pleadings assert that the emails are inadmissible hearsay that cannot be considered by this Court while ruling on Defendant's Motion for Summary Judgment. Further, the statements were made by the Plaintiff in her individual capacity and by the Defendant's agents or employees on a matter within the scope of their employment. F.R.E. 801(d)(2).

contract acquired by R&G and an apartment complex located in Silver Spring, Maryland with approximately 1100 apartments. (ECF No. 27-1 at ¶¶ 6, 12; ECF No. 27-2 at ¶1.) The email also stated "anytime you need additional training on ANYTHING, let me know. Your team should all receive 2 days of training before being left on a property to service the client alone." (ECF No. 26-3 at 64; ECF No. 27-3.)

On January 11, 2016, one day before McNamara sent Whitt that email detailing her new responsibilities, her husband, also an employee of R&G, received a CT scan which showed large calcified lesions. (ECF No. 27-1 at ¶ 16.) On or about January 15, 2016, Plaintiff telephoned McNamara to tell him that her husband had two brain tumors which would probably need to be surgically removed. (*Id.* at ¶ 18.) On January 17, her husband was admitted for further evaluation. (*Id.* at ¶ 17.) On January 18, McNamara responded to Plaintiff with a two-fold response. (ECF No. 26-3 at 73-74; ECF No. 27-4.) First, he wrote that her husband's shifts had been taken care of so that he could recover and "his job is presently awaiting his return."[3] (ECF No. 26-3 at 73-74; ECF No. 27-4.) Second, he asked what the company was "to expect" from Plaintiff during this time. (ECF No. 26-3 at 73-74; ECF No. 27-4.) In response, Plaintiff stated that she would need to take the week off, from January 19 to January 22, 2016. (ECF No. 26-3 at 73-74; ECF No. 27-1 at ¶ 18). She took paid leave for these days. (McNamara Aff., ECF No. 26-5 at ¶ 5.)

During this paid leave, on January 21, 2016, McNamara emailed Whitt explaining that her sick time expired that Friday, January 22, and "any additional time w[ould] need to be vacation or unpaid time off." (ECF No. 26-3 at 78; ECF No. 27-6.) On Monday, January 25,

---

[3] There is nothing in the record concerning whether Plaintiff's husband sought and/or obtained FMLA leave.

2016, she wrote back that she would need that Monday and possibly Tuesday off and that her husband needed surgery but it had not yet been scheduled. (ECF No. 26-3 at 78; ECF No. 27-6.) However, she stated that she would still be working on the payroll and checklist. (ECF No. 26-3 at 78; ECF No. 27-6.) McNamara wrote back that same day, again stating that any additional time beyond Whitt's sick time would "be accounted for either as used vacation time, or, if you need an unpaid leave with your job waiting for you, you're free to take what time you need." (ECF No. 26-3 at 78; ECF No. 27-6.) From the time when Plaintiff came back from leave and through February of 2016, Plaintiff testified that she continued working and performing her responsibilities as Regional Manager. (Whitt Depo., ECF No. 26-3 at 30-31.) She worked daily at the Enclave property from 7:30 a.m. to 12 p.m., and then she would work from home.[4] (ECF No. 27-1 at ¶ 35.)

On or around February 11, 2016, Whitt learned that her husband's surgery would be in two weeks. (ECF No. 27-1 at ¶ 19.) On February 18, she told McNamara the scheduled date, and on February 22 told him that she would not be available from the evening of February 24 to at least March 1, 2016. (ECF No. 27-1 at ¶ 19; ECF No. 27-9.) Accordingly, Whitt again went on paid leave during that time. (McNamara Aff., ECF No. 26-5 at ¶ 7.) It is during this time of her second leave that McNamara testified that he learned of several deficiencies in Plaintiff's work performance, which he ultimately reported to Ryan Lemmer. (*Id.* at ¶¶ 9-15.)

On March 1, 2016, McNamara emailed Plaintiff stating that according to Human Resources, she had five days left of paid time off (PTO). (ECF No. 26-2 at 79; ECF No. 27-

---

[4] As discussed below, the parties dispute whether Plaintiff received permission to work from home.

10.) However, because PTO was frozen company wide, the company needed her back at work or to suspend PTO. (ECF No. 27-10.) The next day, March 2, 2016, Plaintiff responded that she wanted her vacation time released because "an interruption in pay would put [her] family in further turmoil." (*Id.*) She also stated that she would be submitting FMLA paperwork as soon as she received her husband's doctor's signature. (*Id.*) In response, that same day on March 2, 2016, McNamara wrote Plaintiff that the company expected her to return to work, or she was "free to decline, and cite FMLA as [she] deem[ed] necessary, and within those guidelines we will authorize you to assume unpaid leave and tend to your family. . . . [W]e simply ask that you return to work or continue your leave of absence unpaid and return at your earliest." (*Id.*) When Whitt did not respond within a few hours, McNamara again wrote to her stating that "we are left to assume that you're in need of additional time," and, although "this is not a termination notice," mandated that she return all company keys and equipment by Friday, March 4, 2016. (*Id.*)[5]

Whitt did not return the company keys or equipment by that Friday. (Exh. 14, ECF No. 26-3 at 85-86.) On March 7, 2016, she wrote to McNamara indicating that she was not in a position to return to work and would update him after her husband's upcoming appointment. (*Id.*) McNamara responded that day saying that he had been trying to contact Whitt and needed a timeline on when she would be able to return all company equipment and FMLA paperwork. (*Id.*) The next day, March 8, 2016, Defendant sent two employees

---

[5] Although the FMLA was referenced in emails, Plaintiff never submitted FMLA paperwork nor explicitly stated that she was invoking her FMLA leave. In addition, Defendant never notified Plaintiff whether her requested leave was FMLA or "how it was being counted against [her] 12 week entitlement." (ECF No. 27-1 at ¶ 19.) Defendant also never requested any medical documentation. (*Id.* at ¶ 24.) Plaintiff, however, believed she was on FMLA leave because she got her own forms and was tending to a family member. (ECF No. 26-3 at 32-33.)

and police officers to retrieve the equipment from Whitt's home. (ECF No. 27-1 at ¶ 27; Exh. 1, ECF No. 26-5.)

On March 9, 2016, McNamara filled out Whitt's termination notice. (ECF No. 26-5.) Plaintiff testified that also on that day, Nickol Grenaway, an Assistant Manager at the Enclave, told her that an HR manager had said that Plaintiff "had stolen time and had been terminated." (ECF No. 27-1 at ¶ 28; *see also* Grenaway Aff., ECF No. 27-2 at ¶ 8.) On March 17, 2016, Plaintiff received her termination notice. (ECF No. 27-1 at ¶ 29.) In the termination notice, McNamara observed that:

> On more than one occasion it was noted that Sabrena Whitt offered no training to her officers, minimal direction on their mission and no follow ups. All strategies of leadership were ineffective as she delegated to individuals who reported minimal instruction and no training or set expectations of their duties. On more than one occasion multiple employees were not paid for their time due to her inability to provide prompt submission of documentation within very specific deadlines. . . . To date, Sabrena has made 0 sales contacts. . . . [D]uring the month of February, [Supervisor Isaac Baccarezza] had only been in contact with [Plaintiff] in person a handful of times and never for a substantial amount of time. Leading Office Concierge Danielle Carter stated similarly that Sabrena was observed on the property until no later than noon and was hardly seen on property during the month of February. . . . [Clients] further stated their email communications contained issues and after their attempts to reach out to Sabrena, no results concerning service related issues were forthcoming. Clients had also stated they had on more than one occasion met with Officers and advised [that] the Security Officer was unable to identify why they were on the property, what their mission was and received no training on the property – just provided an address and a time to report for duty. . . . A client requirement on one of the properties is to patrol at night with a marked company vehicle. [The Operations Manager at Signal 88 Security, however,] reported that he had reason to believe that vehicle had not moved in several weeks. . . .

(ECF No. 26-5, Exh. 1.)

On July 6, 2016, Plaintiff brought the instant suit in the Circuit Court for Baltimore City. (ECF No. 2.) Defendant removed the case to this Court based on diversity of

citizenship and federal question jurisdiction, pursuant to 28 U.S.C. §§ 1331, 1332. (ECF No. 2.) Plaintiff alleges that Defendant interfered with her rights under the Family and Medical Leave Act, retaliated against her for exercising those rights, and defamed her under Maryland state law. (*Id.*) Defendant moves for summary judgment on all three claims. (ECF No. 26.)

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Accordingly, when considering a motion for summary judgment, a court's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249; *see also Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (explaining that a court must abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial).

While the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), a court must consider the facts and all reasonable inferences in the light most favorable to the non-moving party. *Judd*, 718 F.3d at 312; *see also Scott v. Harris*,

550 U.S. 372, 378 (2007). The court "must not weigh evidence or make credibility determinations." *Foster v. University of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage). Rather, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *See Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866-68 (2014) (per curiam).

## ANALYSIS

## I.  Family and Medical Leave Act claims

The Family and Medical Leave Act of 1993, 29 U.S.C §§ 2601 *et seq.* ("FMLA") provides that "an eligible employee must be allowed to take up to twelve work weeks of unpaid leave during any twelve-month period . . . [i]n order to care for the spouse, . . . if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 84 (2002) ("Qualifying employees are guaranteed 12 weeks of unpaid leave each year by the [FMLA]," although the FMLA "encourages businesses to adopt more generous polices, and many employers have done so."). Whitt brings two types of FMLA claims, alleging R&G (1) interfered with her substantive rights under the FMLA, and (2) retaliated against her for exercising her FMLA rights. In *Edusei v. Adventist Healthcare Inc.*, No. DKC-13-0157, 2014 WL 3345051 (D. Md. July 7, 2014) this Court explained how the same act, the plaintiff's termination, lent itself to both an interference claim and a retaliation claim. As Judge Chasanow explained:

> Assuming that Plaintiff was entitled to take FMLA leave, denial of that leave is wrongful and constitutes interference. That interference took the form of a

one-day suspension and termination. . . . But the alleged facts also lend themselves to an FMLA retaliation claim, whereby Plaintiff argues that the discipline handed down to Plaintiff was harsher than other employees in her situation would have received *because* she invoked her right to take FMLA leave . . ..

*Id.* at *6 (emphasis in original). This Court addresses these claims in turn.

## A. Interference Claim (Count I)

"To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled." *Sherif v. University of Maryland Medical Center*, 127 F.Supp.3d 470, 477 (D. Md. 2015) (granting summary judgment in favor of defendant for plaintiff's claim that his termination constituted interference with his FMLA rights). Further, the employee must show that the violation prejudiced him or her in some way. *Anderson v. Discovery Commc'ns, LLC*, 517 Fed. App'x. 190, 197 (4th Cir. 2013) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). Harm or prejudice exists when an employee loses compensation of benefits by reason of the violation, sustains other monetary loses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief. *Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 924 (4th Cir. 2007) (citations omitted). However, "[a]n employer can avoid liability under the FMLA if it can prove that it 'would not have retained an employee had the employee not been on FMLA leave.'" *Yashenko v. Harrah's NC Casino, Co., LLC*, 446 F.3d 541, 547 (4th Cir. 2006) (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)). The

burden is on the employer to show that there are no genuine issues of material fact with regard to whether the employer would have retained the employee regardless of FMLA leave. *See Quigley v. Meritus Health, Inc.*, No. WDQ-14-2227, 2015 WL 799373, at *3 (D. Md. Feb. 24, 2015) (explaining that it was the defendant's burden to show that the plaintiff's position would have changed due to reorganization regardless of her taking FMLA leave, and because the motive behind reorganization was at issue, summary judgment was inappropriate).

Plaintiff alleges that Defendant interfered with her FMLA rights by terminating her because she required leave to care for her husband. (ECF No. 2 at ¶¶ 14-22.) Initially in its Motion for Summary Judgment, Defendant argued that Plaintiff was not entitled to FMLA leave because it was "unlikely" that she worked the requisite number of hours and she did not show that she put R&G on adequate notice of her intent to take leave. (ECF No. 26-1.) However, Defendant did not further address these arguments in its Reply to Plaintiff's Response, whereby Whitt asserted with supporting documentation that she worked well over the requisite time to make her FMLA eligible, and Defendant was on notice that she was requesting FMLA leave. (ECF Nos. 27, 28.) Accordingly, Defendant abandoned this argument. Further, although Plaintiff never asked for nor submitted FMLA paperwork, an "employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed." 29 C.F.R. § 825.303(b*); Bosse v. Baltimore Co.*, 692 F.Supp.2d 574, 588 (D. Md. 2010). Accordingly, it is sufficient that Plaintiff advised her supervisor, McNamara, of her husband's serious health condition and that she needed time off. (ECF No. 26-3, Exhs. 10, 11, 13.) Further, prior to her termination, Plaintiff explicitly

told Defendant that she would be submitting her FMLA paperwork as soon as she received a doctor's signature. (March 2, 2016 email, ECF No. 27-10 at 3.) Defendant further argues that Whitt's interference claim fails as a matter of law both because no one demanded that she return to work, but rather advised her that she needed to return *or* initiate FMLA leave, and because the company would not have retained her as an employee even if she had not taken FMLA leave.

Beginning with Plaintiff's first allegation, the communications between Whitt and McNamara clearly show that he was not demanding she return to work, but rather was asking her to "cite the FMLA" if she needed more time off. ECF No. 27-10 (McNamara writing to Plaintiff on March 2, 2016 that the company expected her to return to work, or she was "free to decline, and cite FMLA as [she] deem[ed] necessary, and within those guidelines we will authorize you to assume unpaid leave and tend to your family."); Exh. 14, ECF No. 26-3 at 85-86 (McNamara writing to Plaintiff on March 6, 2016, that he needed a timeline on when she would be able to return all company equipment and FMLA paperwork.) Accordingly, there is no genuine dispute of material fact as to whether R&G demanded that Whitt return to work in interference with her FMLA rights.

Moving to Plaintiff's argument that she was terminated because she was taking care of her husband, Defendant argues that this is not grounds for an FMLA interference claim because R&G would have terminated her even if she had not taken FMLA leave. Defendant relies heavily on the United States Court of Appeals for the Fourth Circuit decision in *Mercer v. Arc of Prince George's County, Inc.*, No. 13-1300, 532 Fed. App'x. 392 (4th Cir. July 11, 2013), whereby the Fourth Circuit upheld this Court's grant of summary judgment against the

plaintiff on her FMLA interference claim. The plaintiff in *Mercer* worked as a full-time finance and benefits coordinator for the defendant. In that role, she was responsible for applying for and processing benefits applications for the defendant's clients under the Food Stamp Program and Social Security. Prior to taking FMLA leave, there were documented instances where the plaintiff was not properly performing her roles. Then, when the plaintiff took FMLA leave, her co-workers further discovered that many eligible clients were not receiving benefits due to the plaintiff's failure to submit certain requests. When the plaintiff was placed on administrative leave so that the defendant could investigate the problem, it discovered that the plaintiff had "grossly deviated from her job's requirements by failing to obtain and maintain Food Stamp benefits for 99 of the 160 [eligible clients]." After she was terminated she brought an FMLA interference claim. This Court granted summary judgment in favor of defendant, finding that there was undisputed evidence that she failed to perform her duties satisfactorily before she took her FMLA leave.

The Fourth Circuit affirmed, finding that the plaintiff's arguments that she adequately performed her work and occasional lapses in clients' benefits were routine lacked support in the record. The court emphasized that "[i]n ruling on a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177 (1990)). Moreover, the non-moving party cannot attempt to defeat summary judgment "through mere speculation" but rather must "'produce some evidence (more than a scintilla) upon which a jury could properly find a verdict for the party

producing it, upon whom the onus of proof is imposed.'" *Id.* (quoting *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008)). Accordingly, the plaintiff's subjective view of her own performance and "speculat[ion] that the [the defendant's] proffered reason [wa]s not the real reason it terminated her employment" was not sufficient to survive summary judgment. *Id.* at 397.

Unlike in *Mercer*, however, there is a genuine issue of material fact with respect to whether Whitt satisfactorily performed her duties before she took FMLA leave. While Defendant alleges that it discovered several instances of misconduct by Plaintiff during or before she was on FMLA leave, most of Defendant's claims are general in nature, not referring to individual persons but rather using terms like "clients," "employees," "subordinates." *See e.g.* Def.'s Mot., ECF No. 26-1; *see also Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299-300 (4th Cir. 2012) ("'[W]here the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing.'" (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003)). Further, Plaintiff then denies each of these allegations with as much as or more detail as alleged by Defendant.[6]

The most specific reasons R&G provides for Whitt's termination are that she failed to submit new hire packets and worked from home without permission. She denies these with specificity in her affidavit. To the first point, she states that because she was never given

---

[6] For example, she testified that she trained a concierge supervisor, Cheryl Robinson, at the Enclave to utilize the patrol monitoring software. (ECF No. 27-1 at ¶ 32.) Further, that she did not need to train another employee, Isaac Baccarezza, because he had worked for her previously and was already trained. (*Id.*) Finally, that new hires were trained by these two individuals. (*Id.*)

any procedures for submitting new hire packets, she followed the procedures which she used under the previous management. (ECF No. 27-1 at ¶ 30.) That procedure included not submitting a hiring packet until it was complete. (*Id.*) To the second point, Plaintiff states that she met with Lemmer and McNamara around December 1, 2015, who told her that with her new position she would be splitting her time between the Enclave and working at home. (*Id.* at ¶¶ 31, 35.) It is undisputed that Whitt then had office equipment at her home. She also testified that she further confirmed with McNamara around January 15, 2016, that she had permission to work from home. (*Id.*)

Finally, Whitt supports her assertions that she did not commit the above instances of misconduct with the affidavit of Nickol Grenaway, the assistant property manager for the Enclave. (ECF No. 27-2.) Grenaway testified that "[d]uring the time that Ms. Whitt was in charge of security in 2016, we did not experience, nor aware of, any significant problems with the security personnel, their training, coverage, or schedules." (*Id.* at ¶ 10.) Further, that Plaintiff was frequently at the Enclave during this time and was always available when she was not there via phone and email. (*Id.* at ¶ 11.) Finally, she also testified that during the time her husband was ill, Whitt was still ensuring that security was being provided. (*Id.* at ¶ 12.)

While ruling on a motion for summary judgment, it is not this Court's role to make credibility determinations between the deposition testimony and affidavits of Whitt and Grenaway and the affidavits of McNamara and Lemmer. Defendant alleges that between February 25, 2016 and March 2, 2016 it discovered that Plaintiff's work performance raised legitimate grounds for termination. In addition to Plaintiff's assertions to the contrary, this Court notes that during this alleged time of discovery, McNamara explicitly told Plaintiff that

she was *not* being terminated. ECF No. 27-10 (McNamara writing to Plaintiff on March 1, 2016 that "this is not a termination notice."). Then, seven days after Plaintiff states that she will be filing her FMLA paperwork once she obtains a signature, she is terminated. She has shown by more than a "scintilla" of evidence or conclusory statements that there is a genuine dispute whether she failed to perform her duties satisfactorily before she took FMLA leave, and therefore whether she would have been terminated had she never requested to take leave. Accordingly, viewing all facts in light most favorable to Plaintiff, R&G is not entitled to summary judgment on Whitt's FMLA interference claim (Count I).

### B. Retaliation Claim (Count II)

Plaintiff also claims that Defendant violated the FMLA by terminating her in retaliation for invoking her FMLA rights. Retaliation claims under the FMLA and Title VII are analyzed under the same burden-shifting framework of *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973). *Yashenko v. Harrah's NC Casino, Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006); *Howerton v. Board of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015). Under this framework, the plaintiff must first establish a *prima facie* case of retaliation. To establish a *prima facie* claim of retaliation, a plaintiff must show that "(1) she engaged in protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

Defendant's first argument is that Plaintiff fails to make a *prima facie* case of retaliation because she is unable to establish a causal connection between the protected FMLA activity

and the adverse action, her termination. The Fourth Circuit explained, however, that a plaintiff may meet the "less onerous burden" of a *prima facie* case of causation by showing temporal proximity. *Yashenko*, 446 F.3d at 551. Plaintiff began taking time off for her husband's condition in January of 2016, and specifically indicated that she would be filing FMLA paperwork just seven days before McNamara drafted her termination notice on March 9, 2016. Given this temporal proximity, she has made a *prima facie* showing of causation. *Brantley v. Nationwide Mut. Ins. Co.*, No. RDB-07-1322, 2008 WL 2900953, at *11 (D. Md. July 22, 2008) ("Here, although there are disputes as to which absences in April, May, and June of 2005 were afforded FMLA designation, it is clear that they all occurred within a short period of time before [p]laintiff's June 10, 2005 termination. Thus, [the plaintiff] has satisfied the *prima facie* case." (citing *Yashenko*, 446 F.3d at 551)); *see also Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015) (citing *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) for the proposition that the temporal proximity of two-and-a-half months between a protected activity and adverse employment action was sufficient in itself to satisfy the causation prong). Accordingly, she has made a *prima facie* showing of retaliation.

Once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to assert a "legitimate, nondiscriminatory reason" for its adverse employment action. *Yashenko*, 446 F.3d at 551. "To meet its burden of offering a legitimate non-discriminatory reason for the plaintiff's termination, a defendant need only have had an honest belief that the alleged reason or misconduct occurred." *Dasilva v. Education Affiliates, Inc.*, No. CCB-15-541, 2015 WL 9582975, at *4 (D. Md. Dec. 31, 2015); *see also Laing v. Fed. Express Corp.*, 703 F.3d 713,

722 (4th Cir. 2013) ( "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (internal citation omitted). If the employer makes that showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported reasons were a "pretext for discrimination." *Yashenko*, 446 F.3d at 551. Accordingly, interference and retaliation claims differ in that an "'interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent.'" *Bosse v. Baltimore Co.*, 692 F.Supp.2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).

Defendant argues that it has offered legitimate, non-discriminatory reasons for terminating Plaintiff, and she has not met her burden of showing pretext. (ECF No. 26-1 at 11.) While in evaluating whether Defendant had a legitimate, non-discriminatory reason for Whitt's termination this Court "is not concerned with the veracity of the allegations *per se*," there is a genuine dispute of material fact as to whether Ryan Lemmer, the principal decision maker, had an *honest* belief that the grounds for firing Whitt were legitimate. *Dasilva*, 2015 WL 9582975, at *4. Lemmer was privy to all of the email conversations between McNamara and Whitt—either because he was copied on them, or because McNamara actively forwarded the conversations to him. This includes one of the first emails following Whitt's husband's treatment whereby Plaintiff tells McNamara that she would need the week off following her husband's admittance in the hospital for further evaluation. (ECF No. 26-3 at 95-97.) McNamara forwarded this conversation to Lemmer, additionally adding the message

"[a]gain, very accommodating." (*Id.*) McNamara also forwarded to Lemmer the email conversation between him and Whitt whereby she stated that her husband would require surgery, adding the message "[y]ou can see here the language I used is extremely supportive [o]f her plight." (*Id.* at 99-100.) Notably, Lemmer was also copied on the March 2, 2016 email where Plaintiff indicated she was gathering her FMLA paperwork and on the March 7, 2016 email where McNamara wrote to Plaintiff that he needed a timeline on when she would be able to return the work equipment and FMLA paperwork. (*Id.* at 107-08.)

Lemmer also knew about one of the alleged grounds for Whitt's termination, the failure to submit the first round of new hire packets, when it occurred in December of 2015. (Lemmer Aff., ECF No. 26-5 at ¶¶ 5-7.) Yet, Whitt was not terminated at that time. Rather, she was terminated by Lemmer after he was aware that she took intermittent leave in January and February of 2016 to care for her husband, and seven days after she indicated that she would in fact be filing FMLA paperwork. There are genuine issues of material fact with respect to Lemmer's proffered justifications for terminating Whitt. Specifically, there is evidence of deficiencies that were allegedly discovered between February 25, 2016 and March 2, 2016 despite an explicit notice to Whitt on March 1, 2016 that she was *not* being terminated. Accordingly, Defendant R&G is not entitled to summary judgment on Plaintiff's retaliation claim (Count II).

## II. Defamation claim

Plaintiff's third claim is that Defendant defamed her by reporting to the Laurel Police Department that she was in wrongful possession of R&G's work equipment and by accusing her of "stealing time." "To sustain a defamation claim, Maryland law requires a showing that:

'(1) the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm.'" *Ziemkiewicz v. R&L Carriers, Inc.*, 996 F.Supp.2d 378, 393 (D. Md. 2014) (quoting *Samuels v. Tschechtelin*, 135 Md. App. 483, 763 A.2d 209, 241-43 (Md. Ct. Spec. App. 2000)).

As to the first statement, that Whitt was in "wrongful possession of Defendant's equipment," she has not shown any evidence that this statement was actually made. During her deposition, she was asked whether she knew if police officers were ever told that she refused to return the work equipment. (Whitt Dep., ECF No. 26-3 at 51.) In response, Whitt stated that she did not know what the police officers were told. (*Id.* at 51-52.) Her subsequent affidavit also does not offer any testimony concerning the alleged statement to the officers. (ECF No. 27-1.) Therefore, she has not met the first element of a defamation claim. In addition, because she has not offered any evidence concerning *who* allegedly made the statement, as a result, she cannot show the third element, that Defendant R&G was at fault for communicating the statement.

Turning to the second statement, that Plaintiff was "stealing time," this statement was allegedly made by Jaime McNamara to Nickol Grenaway, and then by Grenaway to Whitt. (ECF No. 27-1 at ¶ 28; Grenaway Aff., ECF No. 27-2 at ¶ 8.) First, Jamie McNamara is an Administrative Human Resources Manager for R&G. (ECF No. 27-1 at ¶ 28.) She is neither a member of management nor has any authority to hire, terminate, or discipline employees. (Lemmer Aff., ECF No. 28-2 at ¶¶ 4-5.) Accordingly, Defendant R&G is not legally at fault for communicating the statement. Second, even if this statement did meet the elements of a

defamation claim, conditional privilege applies. "[A] conditional privilege defense allows a defendant to avoid liability for an otherwise defamatory statement 'where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.'" *Mazer v. Safeway, Inc.*, 398 F.Supp.2d 412, 429 (D. Md. 2005) (quoting *Carter v. Aramark Sports and Entm't Servs., Inc.* 153 Md.App. 210, 835 A.2d 262, 278 (2003)). Claims of defamation against an employer are subject to this conditional privilege, and "where the defamatory publication is . . . in response to an inquiry and not volunteered, the defendant is afforded greater latitude in what he may say about the plaintiff without incurring liability." *Happy 40, Inc. v. Miller*, 63 Md. App. 24, 35, 491 A.2d 1210, 1216 (1985); *Rabinowitz v. Oates*, 955 **F.Supp. 485, 488 (D. Md. 1996).** When Whitt was terminated, Nickol Grenaway, Assistant Property Manager for one of R&G's client's the Enclave, received an email notifying her of the termination. (ECF No. 27-2 at ¶ 8.) In response, Grenaway called R&G. (*Id.*) As a client of R&G, Jamie McNamara told Grenaway that Whitt was terminated because she had "stolen time." (*Id.*) Accordingly, even if R&G is at fault for the statement by Jamie McNamara, Defendant is nevertheless entitled to summary judgment because the statement is conditionally privileged.[7] Accordingly, judgment is ENTERED in favor of Defendant on Plaintiff's defamation claim (Count III).

## CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment (ECF No.

---

[7] One exception to the privilege is if the statement was made with malice. *Mareck v. Johns Hopkins University*, 482 A.2d 17, 21 (Md. 1984). A court may make the determination of whether a plaintiff has produced sufficient evidence of malice, *Rabinowitz v. Oates*, 955 F.Supp. 485, 488 (D. Md. 1996), and Plaintiff offers no evidence of malice aside from her conclusory allegation in the Complaint. (ECF No. 1 at ¶ 30.)

26) is DENIED in part and GRANTED in part. Specifically, Defendant's Motion is DENIED as to Counts I and II, and this case will proceed to trial on Plaintiff's FMLA interference and retaliation claims. Defendant's Motion is GRANTED however, as to Count III, and judgment is ENTERED in favor of Defendant on Plaintiff's defamation claim.

A separate Order follows.


Dated: January 11, 2018                              ___/s/_____
                                                     Richard D. Bennett
                                                     United States District Judge